## Commonwealth v. McLain.

*Criminal law — Fornication and bastardy — Declarations of mother in extremity of labor — Evidence — "Charge" — Words and phrases — Act of March 31, 1860.*

1. Where a charge of bastardy is made against a man by a pregnant single woman, and she persists in the charge in the extremity of her labor, such declaration is admissible in evidence under the Act of March 31, 1860, P. L. 393, which provides that "the man by such woman charged to be the father of such bastard child shall be the reputed father, and she persisting in the said charge in the time of her extremity of labor, . . . the same shall be given in evidence in order to convict such person of fornication."

2. The word "charge" in the act is not to be confined to. a formal information before a committing magistrate.

Motion to arrest judgment. C. P. Schuylkill Co., June T., 1926, No. 625.

*Cyrus M. Palmer,* District Attorney (with him *M. M. Burke* and *P. H. Burke*), for Commonwealth.

*Henry Houck,* for defendant.

KOCH, J., Nov. 8, 1926.—In this case Marie Barrett gave birth to a female bastard child on May 15, 1926. Afterwards, on the same day, she was taken to the State Hospital at Fountain Springs, and died the following day. This prosecution was brought by the father of Marie on May 15, 1926. The principal evidence upon which the defendant was convicted was given by Mrs. Alice Barrett, the mother of Marie, and by Mrs. Annie Gerrity, a neighbor. The child was born at Lost Creek at the house of Mrs. Pasavage, a sister of Marie Barrett. At the time of the birth of the child, Marie Barrett was seventeen years and one month old. The child was produced in open court by Mrs. Alice Barrett. She and Mrs. Gerrity were present when the child was born, and the Commonwealth proposed to prove by them that when Marie was in the extremity of labor she said that Dennis McLain, the defendant in this

case, was the father of her baby. Marie Barrett had brought no prosecution. The defendant objected to the testimony upon the ground that the evidence of Mrs. Barrett and Mrs. Gerrity was not competent under the provisions of the Act of March 31, 1860, P. L. 393, which is as follows: "Any single or unmarried woman having a child born of her body, the same shall be sufficient to convict such single or unmarried woman of fornication; and the man by such woman charged to be the father of such bastard child, shall be the reputed father, and she persisting in the said charge in the time of her extremity of labor, or afterwards in open court, upon the trial of such person so charged, the same shall be given in evidence in order to convict such person of fornication." This has been the law ever since 1705: 1 Sm. Laws, 27. We overruled the objection and admitted the testimony.

The point raised here was ruled against the Commonwealth in the case of Levi Betz, 2 Woodward, 210, which was called to our attention at the time of the trial. There is no case decisive of the question in our higher courts. Judge Woodward held in that case that the word "charge," as used in the act of assembly, "implies the idea of a formal information before a committing magistrate, . . ." and "that it would be unsafe to sustain a conviction upon proof of an unsworn and uncorroborated statement of the mother of the children. Some details of time, place and circumstance should be shown to the jury to enable them to pass upon the rights of the citizen without hazard or injustice."

The word "charge" has many meanings, among which are "to accuse," "impute," "to ascribe the responsibility of:" Cent. Dict. An accusation can be made by word of mouth as well as in writing, and, in whatever form made, certainly constitutes a charge. The word "charge," as used in the act, should not be confounded with the word "information." An information, as used in the criminal law, is a written accusation which is sworn to and subscribed by the accuser before a committing magistrate. And, if the act of assembly intended that an information must be laid by the mother of a bastard child in order to make her declarations as to the father of the child, in the time of her extremity of labor, admissible as evidence, it would have been simple enough to make that clear by the use of language entirely adequate for the purpose.

If the word "charge" must be construed to mean "an information," then it must mean a prosecution. Blackstone tells us, in chapter 23, book 4, of his Commentaries, that there are three modes of prosecution, namely, presentment, indictment and information. But the Betz case would seem to restrict the word "charge" to mean prosecution by information only. Now, from time immemorial, constables always return to the Court of Quarter Sessions of the Peace, on the first day of its convening for the term, the names of all unmarried women who have been delivered of bastards since the last session. Upon such return, the district attorney founds an indictment for every mother of a bastard, then subpœnas such mother as a witness before the grand jury, and, either before the grand jury or beforehand, gets from the mother the name of the father of the bastard. The father is then properly indicted without an information first being laid by the mother. Why should not the word "charge" include a mother's accusation so made before a grand jury? Or, if a member of the grand jury, of his own personal knowledge, gives information to his colleagues upon which they make a presentment, and the district attorney then bases an indictment on such presentment and calls the mother as a witness to appear before that or a subsequent jury, why should her accusation against the father of the bastard, when made even as an involuntary witness before

the grand jury, not be regarded as a "charge" against the father of the bastard child. If her accusation, when first made, otherwise than in an information, may not be supported by her declaration of paternity in the time of her extremity in labor, then the word "charge" in a law over two hundred and twenty years old, should be taken out of the law and another inserted that will make competent such declarations, irrespective of the mode of prosecution. "Person so charged," as it is found in the statute, means "the man by such woman charged to be the father of such bastard child." "Such woman" means "any single or unmarried woman having a child born of her body." It does not mean a single woman who, before the time of her delivery of a bastard, went to a committing magistrate and formally laid an information. It means the mother of a bastard who charges a man of the fatherhood of her child in the ordinary and generally accepted sense of the word "charge," whether the charge be made in an information or not. Therefore, having made an accusation in any manner whatever, before the time of her delivery, if the mother persists in such accusation in the time of her extremity of labor, the prior charge, however made, and the persisting in the charge in the time of her extremity of labor, constitute "the same [that] shall be given in evidence in order to convict such person of fornication."

Briefly stated, the evidence of the Commonwealth respecting the charge here is as follows: When Mrs. Barrett learned of Marie Barrett's condition, about six months before the child was born, she and Marie went to see the defendant at the house of his sister, a Mrs. Brennan. There Marie, in the presence of her mother, Mrs. Brennan and the defendant, said to the defendant, "You are the father of this child," and the defendant replied, "You run around with other fellows," to which Marie said, "No, I do not," and then the defendant said, "Now, Marie, I am not going to be the goat." Marie said, "You are the one," and he said, "Oh, pshaw!" and ran out and shut the door. As he went out he said, "Well, I am not going to be the goat." Mrs. Brennan said to Marie, in the presence of the defendant and Mrs. Barrett, "Don't accuse anybody that ain't right," and Marie said, "I am not accusing anybody that isn't right. Din is the one." Under such circumstances we think Marie Barrett "charged" the defendant, within the meaning of the law, and that her persisting in such charge in the time of the extremity of her labor is clearly competent evidence. Marie was in great agony in the extremity of her labor. Doctor Murray, of Girardville, was with her from 2 o'clock in the morning until about ten minutes to seven, when he left by automobile for his office, four miles distant, to get something. Upon his return, as he was going up the steps to see his patient, she was taken with a convulsion, became unconscious and so remained until the time she died. The child was born fifteen to thirty minutes after 7 o'clock that morning. During the interval of Doctor Murray's absence, and twenty or thirty minutes before the child was born, Marie told her mother and Mrs. Annie Gerrity that Dennis McLain is the father of her child. She made the statement twice. Mrs. Barrett testified, "I asked her the second time. I was her mother and thought it was in my place." When Mrs. Gerrity asked Marie, "What did you give into him for?" Marie replied, "I had to give into him. He took me up on Raven Run Hill and I had to give into him; he strangled me until I did." Mrs. Barrett has had seventeen children and testified that she knows when the extremity of labor is on, and that when Mrs. Gerrity asked Marie "Who," Marie "was in as much agony as she could be in the extremity of labor." That was about fifteen minutes before Marie was seized with the convulsion and in the absence of the doctor. Testifying as to the girl's agony, Mrs. Barrett said,

"Marie threw her two arms around Mrs. Gerrity and said, 'Oh! Annie, pray for me to die out of my agony.'" Mrs. Gerrity testified that Marie called "Din" three times, and Mrs. Gerrity asked, "What Din do you want?" and Marie replied, "Din McLain." Mrs. Gerrity knows Dennis McLain all his life and said "Din McLain" is the defendant who was then in court. Mrs. Gerrity also testified that she had seen McLain with Marie in an automobile one night, and that Marie said, "That was the night it happened."

If an accusation of bastardy is made against a man by a pregnant single woman, I think it constitutes a charge, irrespective of the form of the accusation, and that if made before delivery, and she persists therein in the extremity of her labor, every requirement of the law is met to make such persistency in the charge competent evidence. If it does not make it competent evidence, then the principle upon which it is rejected seems to me to be the invention of a loop-hole for the absolute escape of one whose guilt seems to be apparent beyond every reasonable doubt. When a woman gives birth to a bastard child, some man is the father of it, and if a jury believes the testimony that ought to convict him, he should be convicted, and no loop-hole for his escape should be invented by an unwarranted interpretation of the law.

We see no good reason why the verdict in this case should be disturbed.

The motion in arrest of judgment and for a new trial is overruled, and the defendant is directed to present himself in court for sentence at 10 o'clock on Monday, Nov. 15, 1926.